COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-067-CV

 

 

GARY W. SHORT                                                                APPELLANT

 

                                                   V.

 

EDDIE D. SHORT                                                                    APPELLEE

 

                                              ------------

 

         FROM
COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Gary W. Short appeals the
trial court=s judgment
partitioning a parcel of land owned by Gary and his brother, Eddie D.
Short.  In three issues, Gary complains
that the trial court improperly partitioned the property, denied Gary=s claim for reimbursement, and ordered him to pay court costs.  Eddie did not file an appellee=s brief responding to Gary=s complaints.  We reverse and
render in part and affirm in part.

The property at issue is a
five-acre tract of real estate in Tarrant County.  Regarding the property, the trial court found
as follows:

$The
property was acquired by M.L. Short and Neta Short (Gary and Eddie=s
parents) during the course of their marriage.

 

$M.L.
had five children during his lifetime: Derryl, Eddie, Gary, Alvin, and Victor.

 

$Victor
predeceased M.L.; he had one child and heir, Geri K. Rhodes.

 

$M.L.
died intestate on July 4, 1988.

 

$At
M.L.=s
death, Neta owned a five-tenths interest in the property; Derryl, Eddie, Gary,
Alvin, and Geri each inherited a one-tenth interest in the property.

 

$Eddie
acquired the interests of Neta and othersCincluding GaryCso
that he owns a nine-tenths interest in the property.

 

$Gary
acquired Geri=s
one-tenth interest.

 

Based on these findings, the
trial court rendered judgment that Gary owns a one-tenth undivided interest in
the property and Eddie owns a nine-tenths undivided interest. 








In his first issue, Gary
challenges the trial court=s finding that M.L. and Neta acquired the property during their
marriage and complains that the trial court erred in rendering judgment that he
owns a one-tenth interest, rather than a one-fifth interest, in the property.

In a partition suit, the
trial court Ashall
determine the share or interest of each of the joint owners or claimants in the
real estate sought to be divided.@[2]  But disputed fact issues must
be resolved by the fact-finder.[3]  Where, as here, the trial court is the
fact-finder, the court=s fact
findings have the same force and dignity as a jury=s answers to jury
questions.[4]  The trial court=s findings of fact
are reviewable for legal and factual sufficiency of the evidence to support
them by the same standards that are applied in reviewing evidence supporting a
jury=s answer.[5]








We may sustain a legal sufficiency challenge only when (1)
the record discloses a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact.[6]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.[7]

The evidence of Neta=s ownership of the
property is as follows:

$M.L. and Neta were married in 1944.  In 1962, they moved onto the property with
their family and began Apaying@ for the property. There is no
evidence concerning the nature of those payments, however, such as whether they
were rental payments or otherwise.  

$Eddie testified that M.L. had told
him that he and Neta had Abought@ the property in 1962 and that Amaybe@ there had been a AContract to Purchase@ the property.  Eddie=s wife, Linda, also testified she had seen a AContract of Sale@ for the property.[8]  Eddie, however, was not able to find any
document in deed records showing a 1962 acquisition of the property by M.L. and
Neta, and no contract of sale was introduced at trial.

 








$Neta
executed an AAffidavit
of Interest@ in
1989, in which she claimed that she and M.L. had bought the property on June 2,
1962 while they were married, and that she still owned a one-half interest in the
property.[9] 
Neta also executed a warranty deed in 1989 in which she purported to
convey her one-half interest in the property to Eddie and Linda.[10]

 

Having carefully considered
this evidence, we hold that it is not legally sufficient to prove that Neta, in
fact, acquired an interest in the property during her marriage to M.L.  Because there is no competent evidence
showing that Neta owned an interest in the property, the trial court erred by
concluding that Gary owns only a one-tenth interest in the property based on
Neta=s alleged five-tenths interest in the property at the time of M.L.=s death.








The evidence, however, does
establish that M.L. acquired the property in 1979 as his sole and separate
property.  A warranty deed executed in September 1979
and filed in Tarrant County in 1980 recites that the property was conveyed to AMendell L. Short.@[11]  The deed does not mention Neta, and by
September 1979, M.L. and Neta had been divorced for over ten years. Further,
nine days after M.L. died in July 1988, Eddie=s wife Linda
executed an affidavit of heirship in which she averred that A[d]uring his
lifetime, and while he was a single man, MENDELL LEE SHORT acquired [the
property] as his sole and separate property[.]@  When the
property was conveyed to M.L. by deed in 1979, Eddie and Linda had been married
nine-and-a-half years.  Linda testified
that, when she signed the affidavit, she believed that M.L. was the sole owner
of the property.  Gary also testified
that M.L. bought the property in 1979.








Because M.L. died unmarried and intestate, his four living
children, along with Geri Rhodes, the sole heir of M.L.=s predeceased
child, each acquired a one-fifth interest in the property at M.L.=s death.[12]  Moreover, according to the trial court=s unchallenged
findings, Eddie acquired the interests of Derryl, Gary, and Alvin in the
property, and Gary acquired Geri=s interest.[13]  Therefore, Gary owns a one-fifth interest in
the property.  Accordingly, we sustain
Gary=s first issue.

In his second issue, Gary
complains that the trial court erred by rendering judgment that he take nothing
on his claim for reimbursement for Eddie=s pro rata share of $19,000 in property taxes that Gary contends he
paid on the property.[14]








The duty to preserve common
property rests on all of the tenants in common.[15]  Thus, a tenant in common who expends funds
for the necessary or proper preservation of common property is entitled in a
judicial partition of the jointly owned property to have such expenditures
charged to the tenants in common in accordance with their pro rata ownership.[16]  But a tenant in common who seeks
reimbursement from his cotenants for such expenditures must Ado equity and allow as an offset the value of the use of the premises.@[17] 

Gary occupied the property
free of charge.  Linda testified that
Gary had offered to help with delinquent property taxes, which Eddie and Linda
were worried about, in exchange for having a place to live on the
property.  Eddie testified that Gary was
living in Athe family
home,@ M.L.=s old
house.  Eddie further testified that the
money Gary had paid for property taxes had been a gift to Eddie and Linda
because Gary wanted to help with the taxes. 
Gary testified that Linda and Eddie had cared for him when he was sick
and Asuffer[ing] seizures and stuff all the time.@  Further, Gary never offered to
allow the value of his use of the property as an offset to his claim for
reimbursement.  Instead, he acknowledged
that he had rented out part of the property and had not shared the rent he
collected with anyone.[18]








We hold that the trial court
did not err by denying Gary=s claim for reimbursement. 
Therefore, we overrule Gary=s second issue.

In his third issue, Gary
complains that the trial court erred by rendering judgment that each party
should bear his own court costs.[19]  Gary argues that, as the successful party, he
is entitled to recover his court costs from Eddie.[20]  Gary was not entirely successful in his suit,
however.  In his petition, he claimed
that he owned a four-fifths interest in the property and that Eddie owned a
one-fifth interest.  Yet the evidence
shows that the opposite is true.  Nor did
Gary prevail on his claim for reimbursement. 
For these reasons, we hold that the trial court did not err by requiring
Gary and Eddie to each bear their own court costs.[21]  Accordingly, we overrule Gary=s third issue.








Having sustained Gary=s first issue, we reverse the part of the trial court=s judgment which declares that Gary owns a one-tenth interest in the
property and that Eddie owns a nine-tenths interest in the property.  We render judgment that Gary owns a one-fifth
interest in the property and that Eddie owns a four-fifths interest.[22]  We affirm the remainder of the trial court=s judgment.

 

PER CURIAM

 

PANEL F: 
CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.

 

DELIVERED:  January 3, 2008











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. Civ. P. 760.





[3]See
Yturria v. Kimbro, 921 S.W.2d 338, 342 (Tex. App.CCorpus
Christi 1996, no writ); Azios v. Slot, 653 S.W.2d 111, 113 (Tex. App.CAustin
1983, no writ); Rayson v. Johns, 524 S.W.2d 380, 382 (Tex. Civ. App.CTexarkana
1975, writ ref=d
n.r.e.).





[4]Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).





[5]Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).





[6]Uniroyal Goodrich Tire Co. v.
Martinez, 977
S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L.
REV. 361, 362B63
(1960).





[7]City of Keller v. Wilson, 168 S.W.3d 802, 807,
827 (Tex. 2005).





[8]Eddie
was fourteen in 1962.





[9]Neta sued for and obtained a
default divorce from M.L. in 1969.  The
divorce decree recites that Ano community property was acquired during the marriage of
the parties hereto.@ 





[10]Neta also intervened in a partition
suit between Alvin and Eddie.  The trial
court in that suit denied Alvin=s motion to strike Neta=s petition in intervention on the basis that Neta=s interest in the property was Anot necessarily extinguished@ by the 1969 divorce decree.  There is no evidence, however, that the trial
court ruled in the 1989 partition suit that Neta owned an interest in the
property.





[11]See
In re Marriage of Murray, 15 S.W.3d 202, 205 (Tex. App.CTexarkana
2000, no pet.) (stating that a deed is prima facie evidence of the grantee=s
ownership).





[12]See Tex. Prob. Code Ann. '
38(a)(1) (Vernon 2003) (providing that the property of an unmarried, intestate
person passes to his children and their descendants).





[13]See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Raman
Chandler Props., L.C. v. Caldwell=s Creek Homeowners Ass=n, Inc., 178 S.W.3d 384, 390 (Tex. App.CFort Worth 2005, pet. denied) (both
providing that unchallenged findings of fact are binding on an appellate court
unless the contrary is established as a matter of law or there is no evidence
to support the finding).





[14]Although
Gary contends that he paid $19,000 in property taxes, the evidence shows that
Gary paid only $8,000 in taxes and Eddie paid $14,156.58.  Gary had Linda purchase cashier=s
checks from his account for first $10,000 and then $9,000, but eventually
changed his mind and had her purchase a check for $8,000 for the taxes.  Linda paid the $8,000 towards delinquent
property taxes that were owed on the property; she put the $10,000 and $9,000
amounts back into Gary=s
bank account. 





[15]Gonzalez
v. Gonzalez, 552 S.W.2d 175, 181 (Tex. Civ. App.CCorpus
Christi 1977, writ ref=d
n.r.e.).





[16]Id.; Wooley
v. West, 391 S.W.2d 157, 160 (Tex. Civ. App.CTyler
1965, writ ref=d
n.r.e.); Poenisch v. Quarnstrom, 386 S.W.2d 594, 597B98
(Tex. Civ. App.CSan
Antonio 1965, writ ref=d
n.r.e.).





[17]Roberts
v. Roberts, 136 Tex. 255, 259, 150 S.W.2d 236, 238 (1941); accord
Scott v. Scruggs, 836 S.W.2d 278, 281 (Tex. App.CTexarkana
1992, writ denied); Gilleland v. Meadows, 351 S.W.2d 656, 658 (Tex. Civ.
App.C
Dallas 1961, no writ) (both following Roberts).





[18]It is
unclear how much rent Gary collected.  He
testified that he had rented the property for Aa
hundred a month, or something like that@ for A[m]aybe
six months or a year.@  He also conceded, however, that he=d had
other renters on the property as well.





[19]Gary=s
contention that the trial court required him to pay all court costs is not
supported by the trial court=s judgment.





[20]See Tex. R. Civ. P. 131 (AThe
successful party to a suit shall recover of his adversary all costs incurred
therein . . . .@).





[21]See
Jones v. Mask, 196 S.W.2d 693, 695 (Tex. Civ. App.CGalveston
1946, no writ) (holding same in partition suit).





[22]See Tex. R. App. P. 43.2(c).